UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC CLERK CHARLESTON, SC
2010 SEP 15 P 2: 52

| | |
|---|---|
| Mr. Henry Myers; Mr. Jerome Myers; and Ms. Gloria Myers, | ) C/A No. 2:10-2081-RMG-RSC |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Report and Recommendation |
| | ) |
| Mr. Walter Kaufmann; Mr. Joseph A. Broom; Ms. Bettye Dorn - Ctr. Dir. Active Day, Inc., | ) |
| | ) |
| Defendants. | ) |
| | ) |

This is a civil action filed *pro se* by Plaintiffs. The case is presently before the undersigned United States Magistrate Judge for report and recommendation following pre-service review pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(e).

Under established local procedure in this judicial district, a careful review has been made of the *pro se* pleadings. The Plaintiffs' complaint is subject to review pursuant to the inherent authority of this Court to ensure that a plaintiff has standing, that subject matter jurisdiction exists, and that a case is not frivolous.[1] *See Fitzgerald v. First East Seventh Street Tenants*

---

[1] Authority in this district indicates that pre-screening, under 28 U.S.C. § 1915, is inapplicable in *pro se*, non-prisoner, fee-paid cases. *See Bardes v. Magera*, C/A No. 2:08-487-PMD-RSC, 2008 WL 2627134 at *8-10 (D.S.C. June 25, 2008) (finding persuasive the Sixth Circuit's opinion in *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999), that § 1915(e)(2) is inapplicable to actions that are not pursued *in forma pauperis*); *Key v. United*

1

*Corp.*, 221 F.3d 362, 363-364 (2d Cir. 2000). *See also Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 307-308 (1989) (mentioning in dicta that "[s]tatutory provisions may simply codify existing rights or powers. Section 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision"); *Pillay v. INS*, 45 F.3d 14, 16-17 (2nd Cir. 1995) (noting that where a *pro se* party filed an appeal and paid the filing fee, 1915(d) was not applicable, however, the Court had "inherent authority, wholly aside from any statutory warrant, to dismiss an appeal or petition for review as frivolous"); *Rolle v. Berkowitz*, No. 03 Civ. 7120 DAB RLE, 2004 WL 287678, at *1 (S.D.N.Y. Feb. 11, 2004) (finding it appropriate to dismiss *sua sponte* and with prejudice a fee-paying *pro se* plaintiff's action when the claims presented no arguably meritorious issue to consider); *Cummings v. Giuliani*, No. 00 Civ. 6634 SAS, 2000 WL 1597868, at *2 (S.D.N.Y. Oct. 24, 2000) (dismissing a non-prisoner *pro se* fee-paid civil action that presented no arguably meritorious claim).

---

*States Dep't of Transp.*, No. 2:01-CV-3076-18RB (D.S.C. Dec. 7, 2001, Order)(finding that a *pro se* non-prisoner plaintiff has to invoke § 1915 before the pre-screening under § 1915 applies to the case). This Court is not conducting an initial review pursuant to 28 U.S.C. § 1915(e)(2) because Plaintiffs have paid the filing fee. *See* Docket Entry 1, Receipt No. 200008001.

As Plaintiffs are *pro se* litigants, their pleadings are accorded liberal construction. *See Erickson v. Pardus*, 551 U.S. 89 (2007); *Estelle v. Gamble*, 429 U.S. 97 (1976). The mandated liberal construction afforded to *pro se* pleadings means that if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. However, a district court may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct the plaintiff's or petitioner's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Further, the requirement of liberal construction does not allow the court to ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

## Background

Plaintiffs, who are father (Henry), son (Jerome), and daughter (Gloria), file their *pro se* Complaint seeking father's "release and remov[al] from all court appointed Guardian's, Guardians Ad Litem and Conservatorship (family service) by law section 62-5-306 and section 62-5-307." (Complaint at 6).

3

The Complaint alleges that Defendant Kaufmann and Defendant Broom (who is alleged to be "a guardian working with Mr. Walter R. Kaufmann") were - without notice, knowledge, or consent of son and daughter - apparently reappointed by the Charleston County Probate Court as father's guardians, or required by the Probate Court, on/about January 20, 2010, to make an annual accounting or report to the Probate Court. (Complaint at 5). According to the Charleston County Probate Court online records website, Defendant Kaufmann (a Charleston attorney), was appointed as guardian of father, on January 22, 2009, at the same time that Family Services, Inc. of N. Charleston was appointed as father's conservator, in case no. 2007GC10000091, which was filed on July 25,2007). *See* http://www.charlestoncounty.org/departments/ProbateCourt/onlinesearch.htm, click "estate/will and conservatorship/guardianship records," enter "Myers, Henry" and click search. (last visited Aug. 31, 2010).[2]

---

[2] The court may take judicial notice of factual information located in postings on government websites. *See McCormick v. Wright*, C.A. No. 2:10-cv-00033-RBH-RSC, 2010 U.S. Dist. LEXIS 13799 at *6-7 n. 5 (D. S.C. Jan. 15, 2010) adopted by, dismissed without prejudice by *McCormick v. Wright*, 2010 U.S. Dist. LEXIS 13726 (D.S.C., Feb. 17, 2010); *In re Katrina Canal Breaches Consolidated Litigation*, No. 05-4182, 2008 U.S. Dist. LEXIS 86538 at *2 (E.D. La. Sept. 8, 2008)(noting that courts may take judicial notice of governmental websites including other courts' records); *Williams v. Long*, 585 F. Supp. 2d 679, 685-89 (D. Md. 2008)(noting that some courts have found postings on government websites as inherently authentic or self-authenticating).

The Complaint alleges that son and daughter "had not heard from . . . Kaufmann since April 1, 2009." (Complaint at 5). Son and daughter allege that they only became aware of father's current guardianship on June 17, 2010, when father was unexpectedly brought home from Active Day, Inc., a Charleston area adult day care provider, for whom Defendant Dorn serves as Center Director, by Defendant Broom, who "showed a letter from Mr. Walter R. Kaufmann, that Mr. Joseph A. Broom is a Guardian working with Mr. Walter R. Kaufmann, the letter was dated January 20, 2010 and expire on January 19, 2010." (Complaint at 5). Broom asked to see father's bedroom and was permitted to do so. Son and daughter allege that Defendant Dorn failed to notify them, on June 17, 2010, that father's transportation arrangements had been changed. (Father usually comes home from Active Day by bus.) Son and daughter gave Defendant Dorn a letter about their concerns on June 22, 2010, and Defendant Kaufmann called them that same day, in response to their letter. (Complaint at 5). Plaintiffs allege that the Department of Veterans Affairs has determined that father is competent to handle his business affairs and that he has a general durable power of attorney authorizing son and daughter to act in his behalf. Plaintiffs allege that father has "been back in [his] home for over a year" and "has not seen or heard from any court appointed guardians, guardians litem or conservator over a year." (Complaint

5

at 6). The Complaint alleges no other specific facts about any prior or current state court proceedings.

On the civil cover sheet, Plaintiffs describe their cause of action as "filing civil rights visitation relief." (Entry 2). In their answers to Rule 26.01 interrogatories, they request a jury trial on claims of "violation of civil rights; fraud doctrine of accrual; evasion; abandonement; basis to the appropriateness of division temporary guardian no notification was given." Their stated basis for filing the claim in the Charleston Division is: "Basis was not notify of the removal of the plaintiff from the Active Day of Inc. with temporary guardian." (Entry 3).

The Complaint, liberally construed with all factual allegations assumed to be true, fails to state a cognizable claim that falls within the scope of this Court's limited jurisdiction. The Complaint should be summarily dismissed because of the lack of diversity of citizenship between the parties and because of the "probate exception" to this Court's subject matter jurisdiction, which prohibits the exercise of federal jurisdiction over matters that are exclusively within the jurisdiction of state probate courts, even when all of the prerequisites for diversity jurisdiction are otherwise present (which they are *not*, in this case, as noted above, because all parties are South Carolina residents). *See McRae v. Evans*, No. 2:06-3075-CWH-RSC, 2006 U.S. Dist. LEXIS 83672 at *4-8 (D.S.C. Nov. 14, 2006) remanded by *McRae*

*v. Evans*, 2007 U.S. Dist. LEXIS 30727 (D.S.C. Apr. 25, 2007)
rehearing denied by, remanded by *McRae v. Evans*, 2007 U.S. Dist.
LEXIS 35652 (D.S.C. May 15, 2007)(citing *Beattie v. J.M. Tull
Found.*, 941 F. Supp. 57 (D.S.C. Oct. 11, 1996))(as to matters which
do not involve administration of an estate or the probate of a
will, but which may be determined in a separate action *inter partes*
in the courts of general jurisdiction of the state, the federal
courts have jurisdiction if the requisite diversity of citizenship
exists). The alleged facts in the Complaint also make Plaintiffs'
claims subject to dismissal under the *Rooker-Feldman* Doctrine,
which precludes Plaintiffs from seeking federal injunctive relief
to overrule the state probate court order(s)/judgment(s) appointing
father's guardian and conservator.

### Discussion

Generally, a case can be originally filed in a federal
district court if there is "federal question" jurisdiction under 28
U.S.C. § 1331 or "diversity of citizenship" under 28 U.S.C. §
1332.[3] Federal courts are courts of limited jurisdiction,

---

[3] The diversity statute, 28 U.S.C. § 1332(a), requires
complete diversity of parties and an amount in controversy in
excess of seventy-five thousand dollars ($75,000.00):

    (a) The district courts shall have original
jurisdiction of all civil actions where the matter in controversy
exceeds the sum or value of $75,000, exclusive of interest and
costs, and is between

    (1) citizens of different States[.]

"constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Since federal courts have limited subject matter jurisdiction, there is no presumption that the court has jurisdiction. *Pinkley, Inc. V. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999)(citing *Lehigh Mining & Mfg. Co. V. Kelly*, 160 U.S. 337 (1895). Accordingly, a federal court is required, *sua sponte*, to determine if a valid basis for its jurisdiction exists, "and to dismiss the action if no such ground appears." *Bulldog Trucking*, 147 F.3d at 352; *see also* Fed. R. Civ. P. 12(h)(3)("Whenever it appears...that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). "[T]he facts providing the court jurisdiction must be affirmatively alleged in the complaint." *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988)(citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936)). To this end, Federal Rule of Civil Procedure 8(a)(1)requires that the complaint provide "a short plain statement of the grounds upon which the court's jurisdiction depends[.]" If, however, the complaint does not contain "an affirmative pleading of a jurisdictional basis, the federal court may find that it has jurisdiction if the facts supporting jurisdiction have been clearly pleaded." *Pinkley, Inc.*, 191 F.3d at 399(citing 2 Moore's Federal

_____

28 U.S.C. § 1332 (emphasis added).

8

Practice § 8.03[3] (3d ed. 1997)). Although the absence of subject matter jurisdiction may be raised at any time during the case, determining jurisdiction at the outset of the litigation is the most efficient procedure. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). If the court, viewing the allegations in the light most favorable to the plaintiff, finds insufficient allegations in the pleadings, the court will lack subject matter jurisdiction. *Id*.

It is clear from the face of the Complaint that diversity of citizenship under 28 U.S.C. § 1332 does not exist in this case because, according to the information provided by Plaintiffs when they filed their Complaint, Plaintiffs and Defendants are residents of South Carolina. Plaintiffs' Complaint and "Civil Cover Sheet" demonstrate that Plaintiffs' domicile is Charleston County, South Carolina. Plaintiffs' address is listed as "2093 Shrimp Road, Charleston, SC 29406." (Complaint at 2-4). Plaintiffs' Complaint, "Civil Cover Sheet," and proposed summons allege that Defendants are also residents of Charleston County, South Carolina. Defendant Kaufmann's and Defendant Broom's address is listed as "P.O. Box 459, Mt. Pleasant, SC Columbia, SC 29465" and Defendant Dorn's address is listed as "915 Folly Road, Charleston, SC 29412." (Complaint at 2-4). The only inference the Court can draw is that all of the Plaintiffs and Defendants live in Charleston County, South Carolina. Because Plaintiffs' Complaint does not ask for

monetary damages, it is not clear whether Plaintiffs' allegations would be sufficient to support a finding that the $75,000 jurisdictional amount would be in controversy in this case. However, that does not matter in this case because, in the absence of complete diversity of citizenship of the parties, the amount in controversy is irrelevant. Accordingly, this Court has no federal diversity jurisdiction of the case *sub judice* because it appears on the face of the Complaint that Plaintiffs and Defendants are all domiciled in the State of South Carolina.

It is also clear that the essential allegations contained in Plaintiffs' Complaint are insufficient to show that the case is one "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. That is, the Complaint does not state a claim cognizable under this Court's federal question jurisdiction. Plaintiffs' allegations do not contain any explicit reference to an alleged violation of a federal statute, treaty, or constitutional provision by Defendants, nor is any type of federal question jurisdiction otherwise evident on the face of the Complaint.

Even when the allegations of Plaintiffs' Complaint are extremely liberally construed to imply an intended, though unexpressed, reliance on 42 U.S.C. § 1983 as a basis for federal question jurisdiction in this case, it is obvious that the statute

is inapplicable to these claims against these Defendants.[4] The "probate exception" to this Court's subject matter jurisdiction prohibits the exercise of federal jurisdiction over matters that are within the exclusive jurisdiction of a state probate court, even if all of the prerequisites for diversity jurisdiction are otherwise present (which is *not* the case here, because all parties are South Carolina residents, as noted above). *See McRae v. Evans*, No. 2:06-3075-CWH-RSC, 2006 U.S. Dist. LEXIS 83672 at *4-8 (D.S.C. Nov. 14, 2006) remanded by *McRae v. Evans*, 2007 U.S. Dist. LEXIS 30727 (D.S.C. Apr. 25, 2007) rehearing denied by, remanded by *McRae v. Evans*, 2007 U.S. Dist. LEXIS 35652 (D.S.C. May 15, 2007)(citing *Beattie v. J.M. Tull Found.*, 941 F. Supp. 57, 58-59 (D.S.C. Oct. 11, 1996))(as to matters which do not involve administration of an estate or the probate of a will, but which may be determined in a separate action *inter partes* in the courts of general jurisdiction of the state, the federal courts have jurisdiction if the requisite

_____

[4] Not a source of substantive rights itself, § 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by "person(s)" acting "under color of state law." *See Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *See McKnight v. Rees*, 88 F.3d 417(6th Cir. 1996). In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) individual defendant(s) deprived him of a federal right, and (2) did so under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

diversity of citizenship exists); *Foster v. Carlin*, 200 F. 2d 943, 947 (4th Cir. 1952).

In *Beattie*, this Court referred to "the well-established 'probate exception' to diversity jurisdiction [which] maintains that 'the federal courts have no jurisdiction over matters within the exclusive jurisdiction of state probate courts.'" *Beattie*, 941 F. Supp. at 58. In such cases, "[t]he jurisdictional matter can be decided by determining whether the action could be maintained in a state court of general jurisdiction in the state where the federal court sits." *Id.* The United States Supreme Court recently narrowed the probate exception in *Marshall v. Marshall*, 547 U.S. 293 (2006), stating that it "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside of those confines and otherwise within federal jurisdiction." *Marshall*, 547 U.S. at 311-12. In reaching its decision, the Supreme Court reiterated the "interference" language in *Markham v. Cabell*, 326 U.S. 404 (1945) that "federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees, and heirs' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or

12

assume general jurisdiction of the probate or control of the property in the custody of the state court." *Id.* at 310 (citing *Markham*, 326 U.S. at 494).

In the instant case, Plaintiffs seek "to be release and removed from all court appointed Guardian's, Guardian's Ad Litem and Conservatorship (family service) by law section 62-5-306 and section 62-5-307." (Complaint at 6). According to Plaintiffs' Complaint, two of the three named Defendants (*i.e.* Defendants Kaufmann and Broom) are the court-appointed guardians of father. (Complaint at 5). In essence, the Plaintiffs' Complaint asks this Court to invalidate or terminate the order(s) of the Charleston County Probate Court which previously adjudicated father as an incapacitated person, appointed a guardian and a conservator for father, and empowered the guardian and conservator to manage father's estate and affairs and to provide for father's support, care, and welfare. *See* S.C. Code §§ 62-1-201, 62-1-302, 62-5-101 et seq. Under § 62-1-302(a)(2), South Carolina's probate court "has exclusive original jurisdiction over all subject matter related to: protection of . . . incapacitated persons, including the mortgage and sale of personal and real property owned by . . . incapacitated persons." Under § 62-5-402, after a petition for protective proceedings has been filed in the probate court, the probate court "has exclusive jurisdiction to determine the need for a conservator or other protective order until the proceedings are

13

terminated" and "exclusive jurisdiction to determine how the estate of the protected person which is subject to the laws of the State must be managed, expended, or distributed to or for the use of the protected person or any of his dependents." Under § 62-5-402(3), the probate court "has concurrent jurisdiction [with the circuit court] to determine the validity of claims for or against the person or estate of the protected person except as limited by Section 62-5-433." Claims exceeding $25,000.00 must be filed in the circuit court. Claims not exceeding $25,000 may be filed either in the probate court or the circuit court. *See* S. C. Code § 62-5-433(A)(1). In the instant case, Plaintiffs do not assert any monetary claims, so the Charleston County Probate Court remains the exclusive state court forum for resolution of their action seeking the removal of father's guardian and conservator. Plaintiffs' action could not be maintained in a state court of general jurisdiction, *i.e.* the circuit court, it could only be maintained in South Carolina's probate court. Plaintiffs' action involves "a purely probate matter" as described in *Marshall*, which in this case is the custody and administration of father's estate, *i.e.* all of his property, pursuant to the state probate court's jurisdiction to determine a person's competency and to appoint a guardian and/or conservator to protect an incompetent person.

Accordingly, because of the "probate exception," this Court has no jurisdiction over Plaintiffs' Complaint.[5]

The allegations in the Complaint also make Plaintiffs' claims subject to summary dismissal under the *Rooker-Feldman* Doctrine, which precludes Plaintiffs from seeking federal injunctive relief to overrule the state probate court order(s)/judgment(s) appointing father's guardian and conservator. Proceedings and rulings made in the courts of the State of South Carolina cannot be reviewed or set aside by the United States District Court for the District of South Carolina in this case. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476-82 (1983)(a federal district court lacks authority to review final determinations of state or local courts because such review can only be conducted by the Supreme Court of the United States under 28 U.S.C. § 1257).[6] *See Rooker v.*

---

[5] Even under a very narrow construction of the "probate exception," where the exception is deemed to apply only to actions involving the administration of a *decedent's* estate or the probate of a will, which actions do not require a federal court to disturb possession of a *decedent's* estate that is properly in the hands of a state probate court, this Court would still not have jurisdiction over the instant case because Plaintiffs have failed to allege facts sufficient to establish federal question jurisdiction and the lack of complete diversity of citizenship between the parties fails to establish diversity jurisdiction. *See Beattie*, 941 F. Supp. at 58-59; *Foster*, 200 F. 2d at 947.

[6] Appeals of orders issued by lower state courts must go to a higher state court. The Congress, for more than two hundred years, has provided that only the Supreme Court of the United States may review a decision of a state's highest court. *See* 28 U.S.C. § 1257. Since 1988, such Supreme Court review is discretionary by way of a writ of certiorari and is not an appeal

*Fidelity Trust Co.*, 263 U.S. 413 (1923). This prohibition on review of state court orders by federal district courts is commonly referred to as the *Rooker-Feldman* doctrine or the *Feldman-Rooker* doctrine. *See, e.g., Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005); *Davani v. Va. Dep't of Transport.*, 434 F.3d 712 (4th Cir. 2006); *Ivy Club v. Edwards*, 943 F.2d 270, 284 (3d Cir. 1991). Because the *Rooker-Feldman* doctrine is jurisdictional, it may be raised by the Court *sua sponte*. *American Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003). According to the Fourth Circuit, "the *Rooker-Feldman* doctrine applies . . . when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006); *cf. Ruttenberg v. Jones*, 2008 WL 2436157 (4th Cir. June 17, 2008)(reversing a *Rooker/Feldman* dismissal).

Longstanding precedents preclude the United States District Court for the District of South Carolina from reviewing the findings or rulings made by the South Carolina state courts.

---

of right; *see Ernst v. Child and Youth Servs.*, 108 F.3d 486, 491(3d Cir. 1997). In civil, criminal, and other cases, the Supreme Court of the United States has reviewed decisions of the Supreme Court of South Carolina that were properly brought before it under 28 U.S.C. § 1257 or that statute's predecessors, *e.g. Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1991) (an example of a South Carolina Supreme Court case that was reviewed by the United States Supreme Court).

Plaintiffs' submission of the Complaint in this case appears to be an attempt to have this Court review state court proceedings that took place in the Charleston County Probate Court in 2009 and 2010. *See Anderson v. Colorado*, 793 F.2d 262, 263 (10th Cir. 1986)("[I]t is well settled that federal district courts are without authority to review state court judgments where the relief sought is in the nature of appellate review."); *see also Hagerty v. Succession of Clement*, 749 F.2d 217, 219-20 (5th Cir. 1984)(collecting cases). In this case, Plaintiffs are clearly claiming that they have been wronged and injured as a result of the state court decisions made in father's guardianship or conservatorship proceeding. This is precisely the type of claim that the *Rooker-Feldman* doctrine precludes. *See Willner v. Frey*, 243 Fed. Appx. 744 (4th Cir. 2007). To rule in favor of Plaintiffs on their claims in connection with the state court proceedings to which they were parties would, necessarily, require this Court to overrule (or otherwise find invalid) various orders and rulings made in the courts of the State of South Carolina. Such a result is prohibited under the *Rooker-Feldman* doctrine. *Davani*, 434 F.3d at 719-20; *see Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. at 293-94; *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 200-202 (4th Cir. 1997).

Additionally, any § 1983 claims against Defendants Kaufmann and Broom, insofar as they involve alleged wrongful

actions of these court-appointed guardians which occurred "within the judicial process," are barred by Defendants' quasi-judicial immunity under *Fleming v. Asbill*, 42 F.3d 886, 889 (4th Cir 1994). While a state common law negligence claim or breach of fiduciary duty claim, against Defendants Kaufmann and Broom for injury to father, would be viable under *Fleming*, any such pendent state law claim should be dismissed here because there is no diversity of citizenship among the parties and there is no supplemental jurisdiction based on the existence of a cognizable federal claim. Even very liberally construed, Plaintiffs' Complaint fails to state such a state law claim against Defendants Kaufmann and Broom.

Plaintiffs' only claim against Defendant Dorn is that she "did not notify Mr. Henry Myers['] family, about any change in his transportation," on June 17, 2010, when Defendant Dorn allowed Defendant Broom to drive father (Henry Myers) to his home from Active Day, Inc. The Complaint alleges that father arrived home at 5:00 p.m. that day, which is about an hour later than his usual arrival time of 3:45 or 4:00 p.m. when he travels home by bus. (Complaint at 5). Because the United States Constitution regulates only the government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes "state action." *See, e.g.,* *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). To qualify as state action, the conduct in question "must be caused by the exercise of

some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and "the party charged with the [conduct] must be a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937; *see U. S. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen Helpers of Am., AFL-CIO*, 941 F.2d 1292 (2d Cir.1991).

First, Plaintiffs' Complaint makes no allegations that Defendant Dorn is a "state actor." Purely private conduct such as that alleged by Defendant Dorn in this case, no matter how wrongful, injurious, fraudulent, or discriminatory, is not actionable under 42 U.S.C. § 1983 or under the Fourteenth Amendment, the two most common provisions under which persons come into federal court to claim that others have violated their constitutional rights. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1983); *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 721 (1961).

Second, even if the Complaint had adequately alleged that Defendant Dorn acted under color of state law, § 1983 would still not provide federal question jurisdiction in this case. Plaintiffs' allegations against Defendant Dorn sound of a state law negligence claim, not a federal cause of action under § 1983, if they can be construed to state a claim at all, since they allege no injury to any of the Plaintiffs and seek no relief from Defendant

Dorn. *See, e.g., Bloom v. Ravoira*, 529 S.E.2d 710 (S.C. 2000)(negligence); *Howard v. S. C. Dept. of Highways*, 538 S.E.2d 291 (S.C. Ct. App.2000)(property loss and damage by negligence is recoverable). Federal actions for damages against state actors pursuant to 42 U.S.C. § 1983 do not impose liability for violations of duties of care (such as those involved in negligence actions) arising under state law. *See DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 200-03 (1989). Thus, § 1983 cannot provide this Court with federal question jurisdiction to consider Plaintiffs' Complaint's claims against Defendant Dorn.

Negligence is a state-law-based cause of action that may only be heard in federal court where there is diversity of citizenship among the parties or where there is supplemental jurisdiction based on other viable federal claims. *See Ysais v. Richardson*, 603 F. 3d 1175, 1179 (10th Cir. 2010); *Good v. City of Sunbury*, 352 F. Appx. 688, 689-90 (3d Cir. 2009); *see also Quint v. Village of Deerfield*, No. 07-C 5413, 2010 WL 675565 at *1 (7th Cir. Feb. 26, 2010). Because Plaintiffs' federal question claims against Defendants Kaufmann and Broom are subject to dismissal in this case, the Court should decline to exercise supplemental jurisdiction over the state law claim that Plaintiffs attempt to assert against Defendant Dorn. Under supplemental jurisdiction, the federal claim acts as a jurisdictional "crutch." *See* David D. Siegel, Commentary on 1990 Revision, appended to 28 U.S.C.A. § 1367 (West 1993). Title 28

U.S.C. § 1367(c)(3) recognizes that, once that crutch is removed, the remaining state claim should not be adjudicated. Because this Court has no original federal question or diversity jurisdiction to hear Plaintiffs' 42 U.S.C. § 1983 claims against Defendants, the Court should also decline to exercise its supplemental jurisdiction over Plaintiffs' possible state law claims against Defendants, under 28 U.S.C. § 1367(c)(3). *See Lovern v. Edwards*, 190 F. 3d 648, 655 (4th Cir. 1999)("[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants."). The state law claims should be dismissed without prejudice, thus allowing Plaintiffs to pursue them in state court.

## Recommendation

Accordingly, in the absence of either federal question or diversity jurisdiction, it is recommended that this Court dismiss the Complaint in the above captioned case without prejudice and without issuance and service of process. *See United States Mine Workers v. Gibbs*, 383 U.S. 715 (1966); *see also Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972). Plaintiff's attention is directed to the important notice on the next page.

Robert S. Carr
United States Magistrate Judge

September *16*, 2010
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).